UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CARLOS KNOX | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19–CV–00181 |
| | § | |
| HORNBECK OFFSHORE | § | |
| SERVICES, LLC | § | |
| | § | |
| Defendant. | § | |

## ORDER ON EQUITABLE VACATUR

Before the Court is Defendant's Admiralty Rule E Motion for Equitable Vacatur, for Damages Due to Wrongful Attachment, and to Transfer and Consolidate ("Motion for Miscellaneous Relief"). *See* Dkt. 6. The Motion for Miscellaneous Relief was referred to this Court pursuant to 28 U.S.C. § 636. *See* Dkt. 12. After reviewing the motion, the response, and the applicable case law, the Motion for Miscellaneous Relief is **GRANTED in part**.

### BACKGROUND

In August 2018, Plaintiff Carlos Knox ("Knox"), a Louisiana resident, "was employed by Encore Catering, working as a galley hand and member of the crew of" the HOS BAYOU (the "Vessel"). Dkt. 1 at 2. Defendant Hornbeck Offshore Services, LLC ("Hornbeck Services"), "owned, operated and/or crewed the [Vessel]," which "operat[ed] in [the] navigable waters of the Gulf of Mexico." *Id.*

While performing his duties in the service of the Vessel, Knox alleges that he slipped on the Vessel's stairs, causing him to "sustain[] severe injuries to his head and back, among other injuries." *Id.* at 3. As a result of his injuries, Knox filed this Jones Act suit on May 31, 2019, claiming that the injuries he suffered "were caused by the negligence and/or gross negligence of Defendant, and unseaworthiness of the [V]essel." *Id.*

Several days after filing this Jones Act suit, Knox also filed an *Ex Parte* Motion for Issuance of Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules"). *See* Dkt. 3. On June 5, 2019, United States District Judge George C. Hanks, Jr. granted the motion, issuing a Writ of Maritime Attachment and Garnishment ("Writ of Attachment") against "any and all funds, credits, or other property of whatsoever nature of [Hornbeck Services] in the custody or control of" certain entities identified in an exhibit attached to the order, "up to including the value of Plaintiff's claim, $3,000,000." Dkt 4 at 1–2.

After becoming aware of the Writ of Attachment, Hornbeck Services filed the Motion for Miscellaneous Relief, seeking to vacate the Writ of Attachment under the doctrine of equitable vacatur.[1] *See* Dkt. 6. In its memorandum supporting the Motion for Miscellaneous Relief, Hornbeck Services details several facts that it believes are relevant

---

[1] In the Motion for Miscellaneous Relief, Hornbeck Services also seeks to recoup damages for the wrongful attachment of its property and seeks an order transferring this case to a federal court in Louisiana. *See* Dkt. 6. This Order addresses only Hornbeck Services's request to vacate the Writ of Attachment. Hornbeck Services's other requested relief will be considered at a later date after Knox has had an opportunity to file a written response.

2

to the vacatur issue but were not revealed in Knox's Original Verified Complaint or *Ex Parte* Motion for Issuance of Process of Maritime Attachment and Garnishment. *See* Dkt. 6-1.

First, Hornbeck Services notes that it maintains its "principal place[] of business in Covington, Louisiana, within the Parish of St. Tammany," *id.* at 3; Knox is a resident of "Houma[, Louisiana, within the] Terrebonne Parish," *id.* at 8; and St. Tammany and Terrebonne Parishes are both "within the bounds of the Eastern District of Louisiana." *Id.* at 9. Next, Hornbeck Services explains that on October 4, 2018, Knox originally filed suit in Harris County, Texas state court against it and a related entity, Hornbeck Offshore Operators, LLC (collectively "Hornbeck Entities"), for the same injuries at the heart of this suit. *See id.* at 2–4. Hornbeck Services contends that the Hornbeck Entities moved to dismiss the state court lawsuit for improper venue, and on January 11, 2019, Knox voluntarily dismissed the suit without prejudice "apparently conceding that venue in Harris County was improper." *Id.* at 4. Lastly, Hornbeck Services reveals that a few days after Knox voluntarily dismissed his state court suit, which was several months before Knox filed this suit, the Hornbeck Entities, along with Encore Food Services, LLC, "filed a *Complaint for Declaratory Judgment* in the Eastern District of Louisiana to have the Court adjudicate whether Knox was entitled to maintenance and cure for the allegation that he was injured on the HOS BAYOU on August 10, 2018." *Id.*

Based on these facts, Hornbeck Services argues that equitable vacatur is warranted because it is subject to suit in a convenient district, i.e., the Eastern District of Louisiana; Knox can obtain *in personam* jurisdiction over it in the district where he is located, i.e., the

3

Eastern District of Louisiana; and, conveniently, Knox is already before the Eastern District of Louisiana as a result of its Complaint for Declaratory Judgment.

## HOW THE ATTACHMENT PROCESS WORKS

A.   ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

Supplemental Admiralty Rule B provides in pertinent part:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

FED. R. CIV. P. ADM. SUPP. R. B(1)(a).

A maritime attachment of property under Rule B is authorized when a plaintiff complies with the Rule's filing, notice, and service requirements and establishes that: "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). If these requirements are satisfied at the Rule B application stage, the district court "must enter an order authorizing the attachment." *Id.* at 438.

B.   POST-SEIZURE HEARING UNDER SUPPLEMENTAL ADMIRALTY RULE E

After an attachment order has been issued, a defendant or "any person claiming an interest" in the restrained property, may move to vacate the attachment and demand a "prompt hearing." FED. R. CIV. P. ADM. SUPP. R. E(4)(f). *See also Williamson v. Recovery*

4

*Ltd. P'ship*, 542 F.3d 43, 50 (2d Cir. 2008) ("After the requirements of Rule B have been met, and attachment has occurred, defendants have the opportunity under Rule E(4)(f) to contest the attachment of their property before the district court.") (citations omitted). The Rule E(4)(f) hearing "is designed to satisfy the constitutional requirement of due process by guaranteeing to [the property owner] a prompt post-seizure hearing at which [the property owner] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." *Id.* at 51 (citing FED. R. CIV. P. ADM. SUPP. R. E(4)(f), Advisory Committee's Note to 1985 Amendment).

At the Rule E(4)(f) hearing stage, the burden rests with the plaintiff to show that the requirements of Supplemental Rules B and E have been satisfied. *See Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010) (explaining that "Plaintiff has the burden of justifying a continued attachment" under Rule E); FED. R. CIV. P. ADM. SUPP. R. E(4)(f) ("Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which *the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules*.") (emphasis added).

C.   EQUITABLE VACATUR

In addition to its authority to vacate an attachment due to a plaintiff's failure to satisfy the requirements of Supplemental Rules B and E, a district court also has equitable discretion to vacate an attachment. *See Aqua Stoli*, 460 F.3d at 445. While the scope of the district court's equitable vacatur power has not been defined by the United States Supreme Court or the Fifth Circuit, the Second Circuit has held that equitable vacatur is

5

appropriate under any of the following conditions: "1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Id.* The defendant bears the burden to establish any equitable grounds for vacatur. *See id.* at 445 n.5.

The Fourth and Ninth Circuits have both cited with approval the equitable vacatur test announced in *Aqua Stoli*. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 537 (4th Cir. 2013) (quoting *Aqua Stoli*, 460 F.3d at 447); *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 969 (9th Cir. 2010) ("we agree with and adopt the contours of equitable vacatur laid out by the Second Circuit"). The Eleventh Circuit has not clearly adopted the equitable vacatur test, but citing to *Aqua Stoli*, it has affirmed a district court's vacatur of an attachment based on "an equitable exception to the general rule upholding maritime attachments." *McDermott Gulf Operating Co., Inc. v. Con-Dive, LLC*, 371 F. App'x 67, 70 (11th Cir. 2010) (citing *Aqua Stoli*, 460 F.3d at 444–45). And although the Fifth Circuit has never expressly adopted the equitable vacatur test, "[m]any district court cases in the Fifth Circuit have adopted and/or applied the Second Circuit's test for the vacatur of an attachment." *Agrocooperative Ltd. v. Sonangol Shipping Angola (Luanda) Limitada*, No. H-14-1707, 2015 WL 138114, at *5 (S.D. Tex. Jan. 8, 2015) (collecting cases). In light of these persuasive authorities, the Court adopts the equitable vacatur test announced in *Aqua Stoli*.

## ANALYSIS

As mentioned above, Hornbeck Services argues that equitable vacatur is warranted on both the first and second principles announced in *Aqua Stoli*. Specifically, Hornbeck Services contends that it is conveniently subject to suit in the Eastern District of Louisiana, the same district in which Knox resides. In the Court's view, Hornbeck Services's argument on these points boils down to one simple equitable question: is the purpose of admiralty attachments offended by the attachment granted in this case? To answer this question, the Court looks to the purpose of admiralty attachments.

The United States Supreme Court has explained that "[t]he process of foreign attachment is known of old in admiralty. It has two purposes: to secure a respondent's appearance and to assure satisfaction in case the suit is successful." *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 693 (1950) (citing *Manro v. Almeida*, 23 U.S. 473, 489 (1825) ("The prayer . . . contemplates two purposes; first, to compel appearance; secondly, to condemn for satisfaction.")). In 1825, the United States Supreme Court explained that attachments served a vital role of satisfying those same two objectives, in particular, "where a defendant has concealed himself, or absconded from the kingdom." *Manro*, 23 U.S. at 492. These cases make clear that the attachment process, historically, has been relied upon to deal with concerns related to fleeing shipowners.

In modern times, the courts no longer look to ancient texts and case law to understand the contours of the admiralty attachment process because it has been codified in Rule B of the Supplemental Admiralty Rules. Nonetheless, the timeworn purpose of admiralty attachments remains relevant because "[t]he purpose of Supplemental Rule B

7

was to preserve the ancient process of maritime attachment and garnishment that had been known to courts of admiralty for centuries" as a "creditor's most reliable remedy against [a] nonresident debtor—a person frequently encountered in admiralty." 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3211 (3d ed. 2019) (internal quotation marks and citations omitted).

Here, we are not worried about a shipowner fleeing. Hornbeck Services, the owner of the Vessel, is a business with its principal office located nearby in the Eastern District of Louisiana. Knox, the plaintiff, is a resident of the Eastern District of Louisiana. This case, therefore, presents a curious situation where the plaintiff and defendant are essentially neighbors in one state, and nonetheless, the plaintiff obtained an attachment in a neighboring state. Contemplating an analogous situation, the *Aqua Stoli* court cautioned: "A maritime attachment would likewise be properly vacated if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets." 460 F.3d at 444–45. Although the *Aqua Stoli* court presented a slightly different factual scenario, the Court nonetheless finds its reasoning persuasive. This is especially so where, as here, there is no legitimate concern that Hornbeck Services will flee. Under the facts presented in this case, the Court finds that equitable vacatur is appropriate.

## CONCLUSION

Defendant's Motion for Miscellaneous Relief (Dkt. 6) is **GRANTED in part.** Specifically, the Writ of Attachment and Garnishment ordered by this Court on June 5, 2019 (Dkt. 4) is **VACATED in its entirety** and all property of Hornbeck Offshore

8

Services, LLC is released from any constraint, garnishment, or seizure ordered by the June 5, 2019 Writ of Attachment and Garnishment. The portions of the Motion for Miscellaneous Relief seeking to transfer the case and award damages remain under consideration by the Court.

SIGNED at Galveston, Texas, this 16th day of July, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE